**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
STEPHANIE ROZENZWEIG, a/k/a Stephanie Ytreoy,

                 Plaintiff,

           -against-

CLAIMFOX, INC., a/k/a ClaimFox, Inc., a/k/a Claim Fox Inc., FIG GUNGOR, LEYLA PINARLI, MARIA ZAWESKI,

                 Defendants.
-------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**
2:16-cv-01849 (ADS) (AYS)

**APPEARANCES:**

**Roccanova Law P.C.**
*Attorneys for the Plaintiff*
149 Main Street
2nd Floor
Huntington, NY 11743
    By:    Joseph T. Roccanova, Esq., Of Counsel

**Jackson Lewis P.C.**
*Attorneys for the Defendants*
58 South Service Road
Suite 250
Melville, NY 11747
    By:    Ana Shields, Esq.,
             Henry Scott Shapiro, Esq., Of Counsel

**SPATT, District Judge**:

      This employment discrimination action was brought by the Plaintiff Stephanie Rozenzweig, also known as Stephanie Ytreoy (the "Plaintiff") against the Defendants ClaimFox, Inc. ("ClaimFox"), Fig Gungor ("Gungor"), Leyla Pinarli ("Pinarli"), and Maria Zaweski ("Zaweski") (collectively, the "Defendants"). Presently before the Court is a motion by the Plaintiff, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 15 to amend

1

her complaint to withdraw two causes of action and to add three causes of action. For the following reasons, the Plaintiff's motion is granted in part, and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The Plaintiff worked for ClaimFox for approximately seven months—from August 25, 2014 until March 18, 2015. She worked as an Executive Personal Assistant to Gungor and Pinarli.

The Plaintiff alleges that Claimfox had a short term disability insurance policy with Aflac, "which included maternity leave benefits" for Claimfox's employees. (Complaint at ¶ 32).

In November 2014, the Plaintiff met with Zaweski to tell her that she "was planning to become pregnant in January 2015." (*Id.* at ¶ 33). Zaweski informed her that the Plaintiff could not be covered by the Aflac policy until she had worked for Claimfox for three months, and that she could not submit a claim for maternity leave until ten months after that. Zaweski arranged for the Plaintiff to meet with an Aflac representative so that she could be added to the Aflac policy effective December 1, 2014. According to the Plaintiff, this meant that if the Plaintiff gave birth ten months later, the required interim period would have elapsed.

The Plaintiff met with an Aflac representative at the end of November 2014. The Aflac representative reiterated what Zaweski had said about coverage and maternity leave; and allegedly confirmed that the Plaintiff would be eligible for maternity leave if she waited until January 2015 to become pregnant.

In January 2015, the Plaintiff became pregnant. The Defendants "became aware of the Plaintiff's attempt to exercise her FMLA rights in or about late January 2015," (*id.* at ¶ 41), and "became aware of [her[ pregnancy and/or plan to become pregnant no later than the week of February 16, 2015," (*id.* at ¶ 43).

2

On February 27, 2015, the Plaintiff went on vacation to Florida. She missed five days of work allegedly because weather prevented "incoming flights from landing in New York's airports." (*Id.* at ¶ 47). The Plaintiff states that nevertheless, she performed her job while in Florida.

On March 9, 2015, Pinarli sent a text message to the Plaintiff that read, "Are you hourly or salary?" (*Id.* at ¶ 52). The Plaintiff alleges that from March 9, 2015 through March 18, 2015, Pinarli subjected the Plaintiff to "cold and hostile treatment." (*Id.* at ¶ 55).

On March 18, 2015, Zaweski told the Plaintiff that she was terminated effective immediately. Zaweski allegedly told the Plaintiff that her position was being abolished. The Plaintiff purportedly complained to Zaweski about the "Defendants' discriminatory adverse employment actions." (*Id.* at ¶ 63). ClaimFox then hired a part time employee, who was not pregnant, to fill the Plaintiff's former position.

On June 16, 2015, the Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (the "EEOC").

### 1. Proposed Additional Facts

The Plaintiff did not include a proposed amended complaint with her motion papers. The following facts are gleaned from the Plaintiff's memorandum of law and Plaintiff's counsel's affidavit.

ClaimFox extended its employment offer to the Plaintiff via a letter, which also detailed the terms of her proposed position (the "Offer Letter"). The Offer Letter was signed by Gungor on behalf of ClaimFox on August 15, 2014, and signed and accepted by the Plaintiff on August 16, 2014. The Offer Letter stated, *inter alia*, that the Plaintiff would receive health insurance after 90 days of employment; and that the insurance included paid long term disability.

On August 26, 2014, the Plaintiff entered into a formal written contract with ClaimFox. Zaweski signed the contract on behalf of ClaimFox. The Plaintiff asserts that "[m]ore than seven hundred [] separately enumerated employee policies were incorporated into the [c]ontract via ClaimFox's Human Resources Policy Manual . . . ." (Pl.'s Mem. of Law at 3). The policy manual states that "[ClaimFox] is required by law to provide for the payment of Disability Benefits to their employees. . . . Disabilities arising from pregnancy or pregnancy-related illness are treated the same as any other illness that prevents an employee from working." (Pl.'s Ex. H at D000090).

**B. Relevant Procedural Background**

The Plaintiff filed her complaint on April 15, 2016. The complaint numbered seven causes of action. The complaint alleges that each cause of action violates several statutes. The complaint alleges numerous violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Family Medical and Leave act, 29 U.S.C. § 2601 et seq. (the "FMLA"), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), et seq. (the "PDA"), the New York State Human Rights Law, N.Y. EXEC. LAW § 296 (the "NYSHRL"), and the Americans with Disabilities Act, 42 U.S.C. § 2601 (the "ADA").

On October 4, 2016, the Plaintiff moved to amend her complaint pursuant to Rule 15. Specifically, she seeks to withdraw her fifth and sixth causes of action for FMLA interference and retaliation; add a breach of contract claim against ClaimFox; add a tortious interference with a contract claim against Gungor, Pinarli, and Zaweski (collectively, the "Individual Defendants"); and add a breach of the implied covenant of good faith and fair dealing against all of the Defendants. The Plaintiff attached fifteen exhibits to her memorandum of law. Relevant here, she attached the Offer Letter, her employment contract, as well as ClaimFox's employment policies.

## II. DISCUSSION

### A. The Legal Standard

FED. R. CIV. P. 15(a)(2) applies to motions to amend the pleadings once the time for amending a pleading as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts have construed the rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12–CV–4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits").

A court should deny leave to amend only "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502–03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137–38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

Under the *Bell Atlantic v. Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks and alterations omitted)).

**B. Applicable Law**

    **1. Breach of Contract**

Under New York law, there are four elements to a breach of contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996).

## 2. Tortious Interference with a Contract

To plead a claim of tortious interference with a contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between a third party and plaintiff, (2) that defendant had knowledge of that contract, (3) that defendant intentionally procured a breach, and (4) damages." *Finley v. Giacobbe,* 79 F.3d 1285, 1294 (2d Cir. 1996); *see also Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 151 N.Y.S.2d 1, 134 N.E.2d 97, 99 (N.Y. 1956).

## 3. Breach of Implied Covenant of Good Faith and Fair Dealing

Under New York law, there is a covenant of good faith and fair dealing implied in all contracts. *See 511 West 232nd Owners Corp. v. Jennifer Realty Co.,* 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (N.Y. 2002); *Carvel Corp. v. Diversified Mgmt. Grp.,* 930 F.2d 228, 230 (2d Cir. 1991). "Breach of the implied covenant is considered a breach of the underlying contract. *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 214 (S.D.N.Y. 2007) (internal citations omitted). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 80 (2d Cir. 2002). While the implied covenant of good faith and fair dealing does not "imply obligations inconsistent with other terms of the contractual relationship," it does encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Manhattan Motorcars, Inc. v. Automobili Lamborghini,* 244 F.R.D. 204 (S.D.N.Y. 2007) (quoting *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232, 448 N.E.2d 86 (N.Y. 1983); *Rowe v. Great Atl. & Pac. Tea Co.,* 46 N.Y.2d 62, 69, 412 N.Y.S.2d 827, 385 N.E.2d 566 (N.Y. 1978)).

## C. Application to the Facts

### 1. As to the Form of the Plaintiff's Motion

Under Rule 15, a Plaintiff seeking to amend her complaint must submit a proposed amended complaint as an exhibit to her motion. *See Segatt v. GSI Holding Corp.,* 07-cv-11413, 2008 WL 4865033, at *4 (S.D.N.Y. Nov. 3, 2008). In support of her motion to amend, Plaintiff's counsel filed a declaration with fifteen exhibits, as well as a memorandum. The memorandum in support seemingly provides the proposed additional facts. It does not clearly set forth the causes of action as one would expect in a complaint, but it does state which defendants are subject to the proposed additional causes of action.

"Usually, a movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend." *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 100 (W.D.N.Y. 2009) (citing *Murray v. N.Y.*, 604 F. Supp. 2d 581, 588 (W.D.N.Y. 2009)); *see also La Barbera v. Ferran Enterprises, Inc.,* No. 06–cv–2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought") (internal citations and quotation marks omitted); *Team Air Express, Inc. v. A. Heffco Technologies, Inc.,* No. 06–cv–2742, 2008 WL 3165892, at *10 n. 10 (E.D.N.Y. Aug. 6, 2008) (stating that "the Court could recommend denial of the motion [for leave to amend] solely on the basis of plaintiff's failure to submit a proposed amended Complaint"); *Zito v. Leasecomm Corp.,* No. 02–cv–8072, 2004 WL 2211650, at *25 (S.D.N.Y. Sept. 30, 2004) ("In order to meet the requirements of particularity in a motion to amend, 'a complete copy of the proposed amended complaint must accompany the motion so that

both the Court and opposing parties can understand the exact changes sought.'") (quoting *Smith v. Planas,* 151 F.R.D. 547, 550 (S.D.N.Y. 1993)).

"If the movant's papers adequately explain the basis for, and nature of, the proposed amendment, however, the failure to attach a proposed amended complaint to the motion is not necessarily fatal." *Murray*, 604 F. Supp. 2d at 588 (citing *Segatt*, 2008 WL 4865033, at *4).

Therefore, because the Plaintiff's memorandum of law adequately explains the basis for her amendment, and includes the proposed factual additions, the Court finds that the Plaintiff's failure to include a proposed amended complaint is not fatal and will consider the facts included in the Plaintiff's memorandum of law.

Furthermore, as it appears that the Plaintiff incorporated several exhibits in her memorandum of law, the Court will also consider the exhibits as additional facts proposed by the Plaintiff. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal citations and quotations omitted).

### 2. As to whether the Plaintiff's Motion to Amend is Made Would Unduly Prejudice the Defendants

The Defendants do not argue that they would be unduly prejudiced by the motion to amend, and the Court does not believe that they would be.

"Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Commander Oil Corp. v. Barlo Equip. Corp.*, 215 F.3d 321, 333 (2d Cir. 2000) (affirming grant of motion to amend after seven-year delay, where defendant did not show prejudice). "The concepts of delay and undue prejudice are interrelated—the longer the period of unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).

The Plaintiff moved to amend her complaint approximately five months after she filed her initial complaint, and approximately three months after discovery commenced. Furthermore, the Plaintiff states that she moved to amend upon receiving the contract and related documents in discovery; and notified the Defendants of her proposed motion months before formally filing it.

Therefore, the Court finds that the Plaintiff has not engaged in bad faith; and that the Defendants would not be unduly prejudiced by the proposed amendments. Accordingly, the Court will consider whether the amendments would be futile.

### 3. As to the Futility of the Breach of Contract Claim Against ClaimFox

The Plaintiff argues that her employment contract incorporated several human resources policies that ClaimFox breached by terminating her. Specifically, the Plaintiff contends that ClaimFox breached the following provisions of the HR Manual: the provision of reasonable accommodation, pregnancy leave and disability benefits; and the commitment to not discriminate. In opposition, ClaimFox contends that the human resources manual specifically states that the policies set forth in it are not intended to create a contract; and that even if the policies were a contract, ClaimFox did not breach them.

ClaimFox does not dispute the existence of a contract with the Plaintiff. Instead, ClaimFox argues that the Plaintiff was an at-will employee, who could therefore be terminated at will; and that the Human Resources Policy Manual (the "HR Manual") was not part of that contract. As to the latter point, ClaimFox points to a page in the HR Manual which explicitly states "[p]olicies set forth in this Policy Manual are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind of a contract of employment between CF and any of its employees." (Def.'s Ex. 2). The Plaintiff did not include this page in its submissions to the Court. The page was supplied by the Defendants. The Plaintiff does not dispute the page's validity, and it appears to come from the HR Manual.

Although a court will not normally consider documents provided by a defendant in opposition to a motion to dismiss or a motion to amend, *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993), the court may consider documents that the plaintiff chose not to attach or incorporate but were "documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit," *id.* Therefore, since the Plaintiff supplied the Court with dozens of pages from the HR Manual, the Court will consider this single page supplied by the Defendants from the same manual.

The New York State Court of Appeals has expressly held that a disclaimer such as the one present here precludes a finding that there was a contract. Specifically, the Court said:

> [r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements. . . . It would subject employers who have developed written policies to liability for breach of employment contracts upon the mere allegation of reliance on a particular provision. Clearly that cannot be, especially in light of conspicuous disclaiming language. An employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer. Here we conclude that such disclaimer prevents the creation of a contract and negates any protection from termination plaintiff may have inferred from the manual's no-reprisal provision.

11

*Lobosco V. N.Y. Tel. Co./NYNEX*, 96 N.Y.2d 312, 317, 751 N.E.2d 462 (N.Y. 2001)

This rule has also been followed by federal courts applying New York law. "Where a manual or policy statement contains a disclaimer that nothing in the manual is intended to create a contract, an employee cannot bring a breach of contract claim based on the manual or policy statement." *Sharkey v. J.P. Morgan Chase & Co.*, No. 10 CIV 3824, 2011 WL 135026, at *9 (S.D.N.Y. Jan. 14, 2011) (citing *Baron v. Port Authority of New York and New Jersey,* 271 F.3d 81, 85–86 (2d Cir. 2001); *see also Dellefave v. Access Temporaries, Inc.*, 37 F. App'x 23, 27 (2d Cir. 2002) (summary order) (affirming a district court's dismissal of breach of contract and wrongful termination claims because the employee handbook on which the claims were based had a disclaimer which prevented it from being construed as a contract) (citing *Lobusco v. N.Y. Tel. Co./NYNEX,* 96 N.Y.2d 312, 727 N.Y.S.2d 383, 751 N.E.2d 462, 465 (N.Y. 2001)); *Jain v. McGraw-Hill Companies, Inc.*, 827 F. Supp. 2d 272, 279 (S.D.N.Y. 2011), *aff'd,* 506 F. App'x 47 (2d Cir. 2012) ("Where an employee manual expressly and specifically disavows any intent on the employer's part to accept contractual limitations on its rights as an at-will employer, no binding contract is formed." (internal citations, quotation marks and alterations omitted)).

Therefore, because the HR Manual did not constitute a contract, the Plaintiff cannot sustain a cause of action for breach of contract by alleging that ClaimFox allegedly violated the policies of the HR Manual.

However, even if the Court were to find that the HR Manual constituted an enforceable contract, ClaimFox did not breach the provisions relating to maternity or disability benefits. The Plaintiff never requested, nor was she denied any benefits. She was terminated long before she was due to give birth, and she does not allege that she requested any accommodations or disability leave. ClaimFox cannot be found to have denied what was never requested.

The Plaintiff continually points to her employment contract with ClaimFox, attached as Exhibit D to her memorandum of law, which states that "[t]his document, together with any offer letter, Employment Policies and contractual parts of an Employee Handbook or Employee Policies constitute your contract of employment." (Pl.'s Ex. D, at D000070). However, there is no evidence that the HR Manual is the same as the "Employment Policies" or "Employee Handbook." Even if they were, the page supplied by the Defendant which clearly stated that the HR Manual is not a contract is titled "101 Nature of Employment." It appears to be one of the first pages of the HR Manual; and more importantly, as the case law above illustrates, cannot be construed as a contract.

Accordingly, the Plaintiff's motion to add a cause of action against ClaimFox for breach of contract is denied as futile because the HR Manual and its policies were not a contract.

**4. As to the Futility of the Tortious Interference with a Contract Claim Against the Individual Defendants**

The Defendants argue that since there was no breach of contract, the Individual Defendants could not have intended to procure a breach. They further contend that even if there was a breach of contract, the Plaintiff has failed to allege that the Individual Defendants intentionally procured a breach. The Plaintiff states, in opposition, that she has sufficiently plead the claim. The Court agrees with the Defendants.

First, the individual Defendants cannot have procured a breach because the Court has already found that there was no contract. Therefore, because there was no breach of contract, the Plaintiff fails to satisfy the first element of a cause of action for tortious interference with a contract.

Second, even if the Court found that ClaimFox had committed a breach of contract, there is no evidence that any of the individual Defendants intended to procure a breach. There are no

factual allegations made against Gungor—the complaint states only that the Plaintiff worked for Gungor and that Gungor signed the Offer Letter. The only allegations against Pinarli are that she texted the Plaintiff and subjected her to cold and hostile treatment. The text message imputed to Pinarli was merely a question, and the treatment alleged is vague and conclusory. The only allegation against Zaweski that is relevant for this analysis is that Zaweski terminated the Plaintiff.

Even if an individual could be held liable for tortious interference with a contract for terminating an employee, an officer "of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken." *Murtha v. Yonkers Child Care Ass'n, Inc.*, 45 N.Y.2d 913, 915, 383 N.E.2d 865, 866 (N.Y. 1978) (internal citations and quotation marks omitted); *see also Kriss v. Bayrock Grp. LLC*, No. 10-cv-3959, 2016 WL 7046816, at *22 (S.D.N.Y. Dec. 2, 2016) ("It is well settled that an agent cannot be held liable for inducing its principal to breach a contract with a third person, at least where it is acting on behalf of its principal and within the scope of its authority."); *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 298 (E.D.N.Y. 2012) ("[F]or an agent of a party to the contract to qualify as a 'third party,' the plaintiff must demonstrate that the agent acted outside the scope of his authority . . . .").

Here, Zaweski was acting as an agent of ClaimFox when she terminated the Plaintiff. The Plaintiff has not alleged any facts to suggest that Zaweski, or any of the Individual Defendants, acted outside the scope of their authority as agents of ClaimFox.

Therefore, the Plaintiff's motion to amend her complaint to add a cause of action for tortious interference with a contract would be futile. Accordingly, the Plaintiff's motion to amend her complaint to add that claim is denied.

### 5. As to the Breach of the Implied Covenant of Good Faith and Fair Dealing

The Defendants argue that the Plaintiff's proposed claim for breach of the implied covenant of good faith and fair dealing would be futile because it is duplicative of the Plaintiff's breach of contract claim. The Plaintiff argues that case law permits her to bring both claims on the same set of facts.

To avoid redundancy, "[c]laims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract." *Deutsche Bank Sec. Inc. v. Rhodes,* 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008). "A party may maintain a claim for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." *Id.* Accordingly, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." *ICD Holdings S.A. v. Frankel,* 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997); *see also Madison Capital Co., LLC v. Alasia, LLC,* 615 F. Supp. 2d 233, 239 (S.D.N.Y. 2009); *Murphy,* 58 N.Y.2d 293 (holding that the implied obligation is simply "in aid and furtherance of other terms of the agreement of the parties.").

In arguing that she is permitted to bring both claims under the same facts, the Plaintiff relies on *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109 (2d Cir. 1985), which held that an employer's termination of an at-will employee "for the purpose of avoiding the payment of commissions which are otherwise owed" may breach the implied covenant despite the employee's status as an at-will employee, *id.* at 112. In Wakefield, the employer terminated the plaintiff salesman after the salesman had completed a number of sales but before commissions were paid. *Id.* at 111–12.

The Court finds that *Wakefield* does give some guidance here, although its validity in this circuit has been questioned. *See, e.g., Bravia Capital Partners, Inc. v. Fike,* No. 09–CV–6375, 2010 WL 3359470, at *6 (S.D.N.Y. Aug. 25, 2010) (noting that "*Wakefield*'s continued validity . . . is unclear" and collecting cases, finding that its holding in employment commission cases to be good law). Viewing the facts in the light most favorable to the Plaintiff, and construing all inferences in her favor, the Court finds that it is plausible that ClaimFox terminated the Plaintiff to avoid providing her with a reasonable accommodation, pregnancy leave, or disability benefits. While ClaimFox did not expressly deny affording her those provisions, and therefore did not breach any contract, ClaimFox plausibly breached the implied covenant of good faith and fair dealing by terminating her before they were able to supply or deny her those benefits.

Therefore, the Court finds that, at this stage of the litigation, the Plaintiff has alleged sufficient facts to plausibly allege that ClaimFox breached the implied covenant of good faith and fair dealing. However, because the Plaintiff's contract was with ClaimFox, and not the individual Defendants, the Plaintiff cannot sustain a claim for breach of implied covenant of good faith and fair dealing against the individual Defendants. *See*, *e.g.*, *Harris*, 310 F.3d at 80 (stating that a breach of the implied covenant of good faith and fair dealing was a breach of the underlying contract, and applies to the parties to the contract). The Plaintiff must have realized this when she brought a cause of action for tortious interference with a contract against the individual Defendants, a claim which required the individual Defendants to not be parties to the underlying contract.

Therefore, the Court finds that the Plaintiff has alleged sufficient facts to plausibly allege that ClaimFox breached the implied covenant of good faith and fair dealing; and that the Plaintiff cannot sustain a cause of action for the same cause of action against the Individual Defendants.

Accordingly, the Plaintiff's motion to add a cause of action for breach of the implied covenant of good faith and fair dealing against ClaimFox is granted; and her motion to add the same action against the individual Defendants is denied.

### III. CONCLUSION

Accordingly, for the foregoing reasons, the Court grants the Plaintiff's motion in part and denies it in part. It is granted to the extent that the Plaintiff is permitted to add the proposed additional facts; withdraw her FMLA causes of action; and add a cause of action for breach of the covenant of good faith and fair dealing against ClaimFox. It is denied to the extent that the proposed causes of action for breach of contract against ClaimFox; tortious interference with a contract against the individual Defendants; and breach of implied covenant of good faith and fair dealing against the individual Defendants would all be futile.

The Plaintiff is directed to file an amended complaint in compliance with this Decision and Order. The case is respectfully referred to Magistrate Judge Anne Y. Shields for the remainder of discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York

April 22, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge